**GARY BERNE and BERNE'S ICE COMPANY, INC., Plaintiffs**

**v.**

**CONTINENTAL INSURANCE COMPANY and UNDERWRITERS at LLOYDS OF LONDON, Defendants**

Civil No. 81-410

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 9, 1983

FREDERICK G. WATTS, ESQ. (LOUD, WATTS & MURNAN), St. Thomas, V.I., *for plaintiffs*

JOEL W. MARSH, ESQ., St. Thomas, V.I., *for defendant Continental Insurance Co.*

RICHARD HUNTER, ESQ. (ISHERWOOD, HUNTER, DIEHM), Christiansted, St. Croix, V.I., *for defendant Lloyds of London*

JAMES L. HYMES, III, ESQ., St. Thomas, V.I., *for intervenor Aetna Insurance Co.*

CHRISTIAN, *Chief Judge*

## MEMORANDUM

On the evening of August 4, 1980, Gerard Berne, undertook to unload his automatic hand gun on the premises of the Slipaway Bar.

The weapon accidentally discharged and one, Sandra Leonard, was allegedly injured by the projectile. Sandra Leonard brought suit against the plaintiffs in the instant case seeking damages for her injuries. That action is docketed in this division of our Court at Civil No. 80-423.

At the time of the incident Berne and/or Berne Ice Co., Inc., were the assureds under three separate policies of Insurance. The insurers were the defendants and the intervenor in this lawsuit. Defendant Continental Insurance Company (Continental) issued a policy to plaintiffs on or about August 9, 1978, which we will refer to as the business insurance policy. The Aetna Insurance Company (Aetna) on or about December 13, 1979, issued a policy to Berne and his spouse to be referred to herein as the homeowners policy. Aetna is the intervenor herein. Defendant, Underwriters at Lloyds of London (Lloyds) issued a policy of insurance which covered Berne by virtue of his membership in the National Rifle Association of America. That policy may be referred to herein as the NRA policy.

Berne gave notice of the August 4, 1980, incident to each of the three carriers. Aetna undertook the defense of the suit brought by Sandra Leonard, but at the same time reserved the right to question whether there was coverage. Continental and Lloyds have thus far flatly refused to accept any responsibility in the matter. Hence, this lawsuit. We will deal briefly with each of the policies.

■ We find no coverage under the homeowners policy. The incident which took place at the Slipaway Bar was in no way related to Berne's residence, or any occupant of the residence, or any person in any way connected with the covered home. Thus, we hold that Aetna is in no way responsible under the homeowners policy to defend these plaintiffs in the action in which they have been sued for damages, nor would that insurer be responsible to pay any judgment entered in the aforesaid action for damages.

■ We likewise fully exonerate Continental. The policy issued by that company covered the assureds in business related incidents only. At the trial of this cause Berne testified that he had gone to the Slipaway Bar on the evening in question at the instance of one Joseph Flynn, a customer of the ice company, for the purpose of discussing with Flynn the delinquent account of the Pineapple Beach Hotel, Flynn being in a managerial capacity at the said establishment. In addition to discussing the delinquent account, it appears that there was some exchange regarding some freezers which the Berne Company had provided the hotel for the storage of

ice. It appears that these freezers were not functioning properly. However, at the time immediately before Berne essayed to unload his weapon, he was either awaiting his turn to engage in a game of darts, or he was then the scorer of a dart game then in progress. Berne and Flynn insist that between recording scores, the discussion of business matters continued. The Court makes no such findings, however. To the contrary, we find that the business meeting had ended and Berne was then on a "frolic." Moreover, Berne is condemned by his own words contained in a statement given to an investigator of one of the insurance companies not long after the incident. In that statement Berne admitted that the business talks had been brief and not a matter of hours as he now claims. Additionally, in that statement Berne acknowledged that immediately before he was prompted to unload his weapon he was at the bar waiting his turn to play darts. This leaves us with the NRA policy, only.

Under the terms of its master policy, Lloyds agreed to pay such damages on behalf of Berne as its insured as he became legally obligated to pay because of bodily injury to a third party,

> caused by an occurrence and arising out of the use of public or private land by the insured for hunting, trapping, fishing *or other use of firearms*, bows and arrows and fishing or trapping equipment and all activities sanctioned or sponsored by the National Rifle Association or National Rifle Association affiliated clubs. (Emphasis supplied.)

■■ Concededly, Berne was not engaged in hunting, trapping, or fishing. However, the words "or other use of firearms" are of sufficient breadth to bring the incident with which we are here concerned under the coverage of the policy. Words are to be given their plain meaning. See Title 1 V.I.C. § 42. It seems to this Court that the intent is clear and that there is no qualifying or modifying language. Accordingly, we hold that plaintiffs are entitled to a declaration that there is coverage under the policy issued by Underwriters at Lloyds of London, and that such benefit inures to plaintiff Gerard Berne by virtue of his membership in the National Rifle Association.

Let judgment enter in accordance with the foregoing.